### GUTWILLIG v. WEIDERMAN et al.

(Supreme Court, Appellate Division, First Department. February 11, 1898.)

1. SURPLUS-MONEY PROCEEDING—POWERS OF REFEREE—DAMAGES.

In proceedings to determine the disposition of surplus moneys derived from a sale under a foreclosure judgment, there were two claimants, each the owner of a junior mortgage. The earlier of these was conditioned on the performance by the mortgagors of a building-loan agreement, and to be void if the mortgagors should make good any damage sustained by the mortgagee by reason of a breach thereof. On behalf of the later mortgagee, it was claimed that a question of damages was thus raised, which the referee had no power to determine. *Held* that, as the real question was whether an ascertained sum had become due on the earlier of the two junior mortgages, the fact that such a sum might be called "damages" did not deprive the referee of power to determine the question.

2. MORTGAGES—DEFAULT—RIGHTS OF MORTGAGEE.

It appeared that the mortgagors had failed to perform the building-loan agreement, and had thereby deprived the mortgagee of the security of a certain other mortgage for $9,000. *Held*, that his rights under the bond and mortgage given to secure the performance of the contract became fixed when the mortgagors abandoned the contract.

3. SAME—MEASURE OF DAMAGES.

The proper measure of damages was the amount of the loss necessarily and directly resulting from the mortgagors' breach of the condition of their bond.

Appeal from special term.

Action by Alfred Gutwillig against Morris Weiderman and others. From an order confirming the referee's report, William H. Schmohl and another (claimants) appeal. Reversed.

Argued before BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Frank Barker, for appellants.
Walter Large, for respondents.

PATTERSON, J.　This is an appeal from an order confirming a referee's report in a surplus-money proceeding.　The premises, situated in East Twelfth street, in the city of New York, were sold under a foreclosure judgment.　There were two claimants to the fund, each the owner of a mortgage on such premises.　That of the claimants Schmohl & Kane was dated January 30, 1895, and was recorded the same day.　That of the claimant Ames was dated February 11, 1895, and was recorded February 13, 1895.　The referee reported in favor of Ames, the junior mortgagee, upon the following state of facts:　The premises in November, 1894, belonged to Weiderman & Rosenbaum. At that date Alfred Gutwillig was the owner of other premises, situated in West Sixteenth street, in the city of New York, which were subject to a mortgage of $30,000.　On the day last mentioned, Gutwillig and Weiderman & Rosenbaum entered into an agreement whereby the former contracted to sell and convey the Sixteenth street property to the latter for $56,000; the purchasers to take subject to the $30,000 mortgage, and to give in addition a purchase-money mortgage of $26,000.　Gutwillig further agreed to advance to Weiderman & Rosenbaum $31,500, towards the construction of buildings on the Sixteenth street land,—such advances to be made from time to time as the buildings progressed; and Weiderman & Rosenbaum agreed to make a further mortgage on the Sixteenth street property to secure all the advances made by Gutwillig.　The Sixteenth street premises were conveyed to Weiderman & Rosenbaum pursuant to this arrangement, and they gave back a mortgage for $26,000, and also the mortgage to secure the advances.　They then began to erect buildings on the Sixteenth street land, and Gutwillig advanced to them money, under the loan agreement, amounting on July 5, 1895, to $12,287.97.　It is not disputed that the security of the mortgage for advances attached to that amount.　After that much money had been advanced, Weiderman & Rosenbaum failed in business, and abandoned the work of construction.　Meantime Weiderman & Rosenbaum had given to Gutwillig the mortgage upon the Twelfth street property, in pursuance of the contract by which Gutwillig was to make advances.　It was additional security for the performance by Weiderman & Rosenbaum of their covenants under that contract.　The bond to which it was collateral was, among other things, conditioned upon such performance, and also that in case Weiderman & Rosenbaum "shall pay and make good to said Alfred Gutwillig any and all damage which he may sustain by reason of the failure of said Weiderman and Rosenbaum to keep and perform said building-loan agreement, or any part thereof, as aforesaid, then the above obligation to be void."　During the course of the work under the contract between Gutwillig and Weiderman & Rosenbaum, the latter became indebted to the claimant Ames upon certain promissory notes, to secure which they gave the mortgage of February 15,

1895, above mentioned. On the failure of Weiderman & Rosenbaum, the purchase-money mortgage on the Sixteenth street property was foreclosed, and after applying the proceeds of sale, including the surplus credited upon the mortgage for advances, there remained due from Weiderman to Gutwillig more than $9,000 on account of such advances, no part of which has been paid. The only security to Gutwillig then remaining for that $9,000 was the $3,000 mortgage of January 30, 1895, which mortgage Gutwillig assigned to the claimants Schmohl & Kane, and under which they claim the surplus in this proceeding; that surplus arising from the foreclosure of a mortgage prior to both of those held by the claimants here. The practical question before the referee on this proceeding was whether, under this state of facts, Schmohl & Kane had any claim upon the surplus. He decided they had not, for the reason that there was no proof that Gutwillig or his assigns "sustained any damage by reason of a failure of Weiderman & Rosenbaum to keep and perform the building-loan agreement, or any part thereof." Three propositions are urged in support of the referee's decision: First, that he had no power to determine in this proceeding a question of damages; second, that no damages were proven; and, third, that the proper rule of damages applicable to the breach of the building-loan agreement is such as to deprive the appellants here of any right to this surplus.

1. There can be no doubt as to the power of the referee to determine the matter of damages, as that matter arises in this proceeding. The inquiry related to the existence of liens, their amount, and the respective rights of the lienors. The validity of the appellants' mortgage is not disputed, and its priority in point of time is incontestable. The real question is, was there an ascertained and definite amount due upon that mortgage, to which the appellants were presently entitled? The mortgage itself ceased to be enforceable against the property. It had been wiped out by the foreclosure of a prior mortgage. Whatever lien existed was transferred to the surplus. If the amount were really fixed, whether it be called an amount due upon the mortgage, or liquidated damages for the breach of the agreement, makes no difference upon the question of the power of the referee. There was nothing to be tried by a jury. The existence of the lien, the amount being fixed, was the only matter involved in the investigation. That was a question with which a jury would have nothing to do, and which was therefore within the cognizance of the referee.

2. But it is claimed no damages were proven. We agree with the respondent that damages could only arise from the breach of that condition of the bond which provided for the failure of the obligors to keep and perform all the terms of the building-loan agreement, or any part thereof. The obligors did not perform that agreement, but abandoned it. What damage did Gutwillig sustain, directly resulting from that abandonment? We must take the situation as it was, and not speculate upon contingencies or possibilities. By the default of the obligors, Gutwillig lost the security of the mortgage for advances on the Sixteenth street property to the amount of $9,000. He was under no obligation to go on and finish the buildings. He was entitled to stand on his contract, and look to his securities. He could claim under the

$3,000 mortgage all ascertained damage directly consequent upon the breach of the condition of the bond. What was that? Loss of everything by way of security, except his claim to the surplus on the sale of the Sixteenth street property, and his right of recourse to the $3,000 mortgage on the Twelfth street property. His rights were fixed when Weiderman & Rosenbaum abandoned their contract.

3. Under such circumstances, the proper measure of damages is the amount of the loss that directly and necessarily resulted from the breach of the condition of the bond. That breach was fully proven. Gutwillig was entitled to resort to his securities, and to realize what he could upon them. The breach of the condition of the bond caused a loss of $9,000, advances made by Gutwillig. We are not authorized to look beyond the situation as it was at the time of the default of Weiderman & Rosenbaum, or to speculate upon what might have happened under other possible circumstances. The full amount of damage was ascertained and liquidated when the surplus arising on the sale of the Sixteenth street property was applied in reduction of Gutwillig's advances; and so much of that amount as was secured by the mortgage on the Twelfth street property was the sum due on that mortgage, and payable out of the surplus.

The order appealed from should be reversed, and the matter sent back to a new referee for a rehearing, with $10 costs and disbursements to appellant to abide event. All concur.